UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **ENERGY INTELLIGENCE GROUP, INC., and ENERGY INTELLIGENCE GROUP (UK) LIMITED,** | § § § § | |
| Plaintiffs, | § § | |
| VS. | § | CIVIL ACTION NO. 4:17-CV-3767 |
| | § | |
| **BANK OF AMERICA, N.A.,** | § § | |
| Defendant. | § § | |

## MEMORANDUM & ORDER

Energy Intelligence Group, Inc. and Energy Intelligence Group (UK) Limited (collectively, "EIG") produce specialized publications for the energy industry. EIG contends that Defendant Bank of America, N.A. ("BANA"), a subscriber to numerous EIG publications, repeatedly exceeded the bounds of its licensing agreement with EIG. In EIG's view, this constitutes infringement of EIG's exclusive rights to reproduce and distribute its copyrighted works.

EIG chose to commence this action here in the Southern District of Texas; BANA insists the Southern District of New York is the more convenient venue and seeks transfer there. (Doc. No. 32.) This litigation could reasonably be conducted in either place. Events relevant to this lawsuit occurred in both cities; likewise, persons connected to this lawsuit may be found in both. Transfer should be granted when another venue is "clearly more convenient." *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). Not finding that to be the case here, the Court holds that transfer to the Southern District of New York is not warranted.

1

As an alternative to transfer, BANA seeks dismissal of this action on various grounds. Finding its arguments unpersuasive, the Court declines to dismiss EIG's claims.

**I.     BACKGROUND**

EIG, Inc. and EIG (UK)—a Delaware corporation based in New York City and a UK company based in London, respectively—have produced specialized reporting and commentary for the global energy industry for many years. (Doc. No. 1 at 1–2.) EIG has sixty employees at seven bureaus, including New York City and Houston. (*Id.* at 4.) Its publications at issue here are *Oil Daily*, *Natural Gas Week*, *World Gas Intelligence*, *Petroleum Intelligence Weekly*, *Energy Intelligence Finance*, and *Nefte Compass*. (*Id.* at 2–3.) Each, with the exception of *Oil Daily*, is a weekly publication. BANA is a federally chartered banking association headquartered in North Carolina, with a substantial business presence in New York, Houston, and elsewhere. (Doc. No. 32 at 3; Doc. No. 39 at 2–3.)

EIG registers its publications with the U.S. Copyright Office on a monthly basis. (*Id.* at 7–18.) Its Complaint is accompanied by Certificates of Registration from the U.S. Copyright Office going back to the February 2013 issues of its various publications. (Doc. No. 1-8 to 1-24.) EIG asserts that it provides clear copyright notices and warnings on its publications, its website, and its emails. For instance, an email distribution of *Oil Daily* from 2014 contained the following:

> Copyright (c) 2014 Energy Intelligence Group, Inc. All rights reserved.
>
> Reproduction or distribution internally or externally in any manner (photostatically, electronically, or via facsimile), including by sharing printed copies, or forwarding or posting on local- and wide-area networks and intranets, or sharing user name and password, is strictly prohibited without appropriate license from Energy Intelligence -- contact CustomerService@energyintel.com for more information.

(Doc. No. 1-7.) Similarly, a supplement to *Oil Daily* from 2014 stated the following just beneath its heading: "Copyright © 2014 Energy Intelligence Group. All rights reserved. Unauthorized access or electronic forwarding, even for internal use, is prohibited." (Doc. No. 1-1 at 8.)

EIG explains that its publications are aimed not only at the energy industry, but also at the financial sector. (Doc. No. 1 at 3.) Among EIG's subscribers are various BANA employees, since at least 2013. EIG identifies four persons, based in BANA's Houston, New York City, and Hong Kong offices, who have subscribed to *Oil Daily*; five persons, based in BANA's Houston, New York City, and London offices, who have subscribed to *Natural Gas Week*; one person, based in BANA's Houston office, who has subscribed to *World Gas Intelligence*; two persons, based in BANA's London office, who have subscribed to *Petroleum Intelligence Weekly*; one person, based in BANA's Houston office, who has subscribed to *Energy Intelligence Finance*; and one person, based in BANA's Moscow office, who has subscribed to *Nefte Compass*. (Doc. No. 1 at 18–25.)

A standard licensing agreement, renewed yearly, governs the various subscriptions held by BANA employees. EIG attaches these to its Complaint. For instance, the license agreement in effect for 2017 shows a Bank of America contact, Wendy Fernandez, based in New York City; the period of the agreement; the fee schedule; and the individual BANA employees associated with each subscription. (Doc. No. 1-26.) The agreement also contains a text that defines the scope of the "limited, non-exclusive and non-transferable license" conferred on "Authorized Users" of EIG's publications. (*Id.* at 3.) It provides:

> **Use.** When [Energy Intelligence] Services are accessed and/or provided electronically, Authorized Users may download the licensed EI Services only for their respective individual referential use. In addition, Authorized Users may occasionally distribute a copy of a story from the EI Services to a few individuals, and in a non-systematic manner in the ordinary course of business, provided the copyright and other proprietary rights notices are included and that Subscriber

3

>and/or Authorized User does not edit, alter or abridge the content from the EI Services. For the avoidance of doubt, no such distribution is permitted if in Energy Intelligence's sole judgment it could serve as a substitute for a subscription to publications and/or the content of the publications within the EI Services. Except as otherwise noted in this Section . . . no content from the EI Services may be downloaded, transmitted, broadcast, transferred, assigned, reproduced or in any other way used or disseminated in any form, to any person not specifically identified herein as an Authorized User, without the explicit written consent of Energy Intelligence in each instance.

(*Id.*)

At the heart of EIG's Complaint are two episodes involving BANA employees. First, in February 2015, a BANA employee named Shang Gao emailed an EIG account manager, Jessie Da Silva Sims, asking for access to a particular *Oil Daily* supplement. (Doc. No. 1 at 25–26.) They spoke several times, with Gao evidently telling Sims that he received *Oil Daily* regularly from Erika Smith, a Houston-based BANA employee and subscriber to that publication. (*Id.* at 26.) Gao also indicated that Smith either put *Oil Daily* on an internal library system or forwarded it to him. (*Id.*) This led EIG to contact Daphne Joseph, then EIG's contact at BANA, about the unauthorized copying and distribution of EIG's publications. (*Id.*) According to EIG, Joseph spoke with the managers of "various business groups" at BANA and received their assurance that such unauthorized distribution would not recur. (*Id.* at 27.) Through Joseph, BANA also evidently declined to purchase a "Global Enterprise License" for EIG's publications. (*Id.*) After EIG's exchange with Joseph, Gao again contacted Sims, in the process revealing that he had continued to receive *Oil Daily* via forwarding from other employees. (*Id.*)

Second, in June 2017, two EIG sales employees went to BANA's New York office to visit with Gregg Brody, a subscriber to *Natural Gas Week*. (Doc. No. 1 at 28.) While there, they spoke with Shanna Qiu, a research analyst who worked with Brody. (*Id.*) Qiu allegedly told the EIG employees that Brody "forward[ed] the publication to her and the 'entire team' every

4

week." (*Id.*) Qiu identified one person specifically that also received Brody's forwards, Steve Weiss, whom EIG believes to be a high-level executive at BANA. (*Id.* at 29.)

Based on the foregoing allegations, EIG brought six copyright infringement claims against BANA, one for each of the publications listed above. (Doc. No. 1 at 31–39.) Its Complaint requested a permanent injunction, damages, added damages for willfulness, disgorgement, and other relief. (*Id.* at 41–42.) The Complaint drew BANA's pending motion to transfer or else to dismiss (Doc. No. 32), to which the Court now turns.

## II.  MOTION TO TRANSFER VENUE

Federal law generally permits a plaintiff to sue a defendant in any judicial district where the defendant resides, defining residency to include "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(a), (c). "Because large corporations . . . often have sufficient contacts to satisfy the requirement of § 1391(c) for most, if not all, federal venues, the general venue statute 'has the effect of nearly eliminating venue restrictions in suits against corporations.'" *Volkswagen II*, 545 F.3d at 312 (quoting 14D Wright, Miller, & Cooper, Federal Practice & Procedure § 3802 (3rd ed., 2007)).

The venue transfer statute, 28 U.S.C. § 1404, curbs potential abuses of the general venue statute by preventing plaintiffs from subjecting defendants to inconvenient venues. *Volkswagen II*, 545 F.3d at 312. It provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). This is "a powerful tool to bring forth efficient judicial case management

among the various federal courts." *In re Rolls Royce Corp.*, 775 F.3d 671, 677 (5th Cir. 2014). The party seeking transfer bears the burden of demonstrating that the court should wield this tool. *Volkswagen II*, 545 F.3d at 315. The movant's burden is one of "good cause." *Id.* "[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected. When the movant demonstrates that the transferee venue is clearly more convenient, however, it has shown good cause and the district court should therefore grant the transfer." *Id.*

The court is to assess convenience in light of certain factors "measured across two dimensions: the interests of the litigants, and the interests of the public and judicial system writ large." *Rolls Royce*, 775 F.3d at 677. The former include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The latter include "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* These lists are not "exhaustive or exclusive," nor are particular factors "dispositive." *Volkswagen II*, 545 F.3d at 315. For instance, the Fifth Circuit has said elsewhere that "the plaintiff's choice of forum is clearly a factor to be considered," though it too is "neither conclusive nor determinative." *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003).

With the exception of EIG's choice to commence litigation in Houston, the private interest factors generally favor New York. This owes to the fact that more of the likely witnesses

6

in the case reside in New York than in Houston. The parties' briefing identifies seventeen individuals, of whom fourteen are associated with BANA and three with EIG. (Doc. No. 36 at 4; Doc. No. 32-1.) Of the fourteen current or former BANA employees, six reside in New York, three in Houston, one in Irving, Texas, and five abroad. (*Id.*) Three of those residing abroad live in London, and BANA argues persuasively that New York would be more convenient for them than Houston. (Doc. No. 36 at 4.) Of the three EIG witnesses, two reside in New York and one in Houston. (*Id.*) Though Houston would be more convenient for some, this geographical distribution causes each of the private interest factors to tip toward transfer. Sources of proof associated with these witnesses are more easily accessed; compulsory process reaches more of them; and willing witnesses face lower costs of attendance.

BANA notes an additional connection to New York: EIG, Inc. is headquartered there. (Doc. No. 32 at 12.) BANA suggests that this means documentary sources of proof will be more readily accessed there than in Houston. (*Id.*) EIG counters that some sources of proof will be found in Houston. (Doc. No. 35 at 10.) It adds that electronically stored information can be produced efficiently anywhere. (*Id.*) But "the question is *relative* ease of access, not *absolute* ease of access." *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013). Even if the difference between Houston and New York is small, it supports transfer to New York.[1]

The interests of the public and judicial system writ large complicate matters. Two factors do not support transfer. One is that courts in both venues are familiar with copyright law, presiding frequently over copyright litigation. (Doc. No. 36 at 7.) Another is that no concern for conflicts of law arises because federal law governs the present case. As for local interests, New

---

[1] BANA adds another point that should favor New York. Both parties' attorneys are located there. (Doc. No. 32 at 11.) One might consider this among the "practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen I*, 371 F.3d at 203. But the Fifth Circuit has made clear that the location of counsel "is irrelevant and improper for consideration in determining the question of transfer of venue." *In re Horseshoe Entm't*, 337 F.3d at 434. Accordingly, the Court does not consider it here.

York does have a somewhat greater interest in the dispute and thus a weightier concern for resolving the dispute there rather than here. Houston, it should be said, is not without interests in the case. Relevant events occurred here, and both sides have substantial business presence here. But New York's interest is relatively greater. EIG is headquartered in New York; EIG executed its licensing agreements with New York personnel of BANA; and more New York residents are likely witnesses in this litigation than Houston residents.

By contrast, the potential administrative difficulties flowing from court congestion point decidedly in favor of Houston. Of the many caseload statistics published for district courts, courts assign the most weight to the median time for a civil case to proceed from filing to disposition. *See, e.g.*, *Watson v. Fieldwood Energy Offshore, LLC*, 181 F. Supp. 3d 402, 412 (S.D. Tex. 2016); *BR Tank, LLC v. Holcim (US) Inc.*, 2009 WL 3831379, at *4 (S.D. Tex. Nov. 12, 2009); *ExpressJet Airlines, Inc. v. RBC Capital Markets Corp.*, 2009 WL 2244468, at *12 (S.D. Tex. July 27, 2009). For calendar year 2017, the median time nationwide was 27.0 months. (Doc. No. 32-1 at 15.) The Southern District of New York was above this mark at 29.4 months, while the Southern District of Texas was well below it at 20.4. (*Id.* at 25, 50.) This substantial disparity has existed consistently for years. (*Id.*)

BANA insists that EIG's choice of venue should be given no weight. It contends that when a plaintiff is not from the chosen forum and the "key operative facts underlying the case" did not occur in the chosen forum, the plaintiff's choice should get no consideration. (Doc. No. 32 at 8–9.) Indeed, there is precedent for that. *See, e.g.*, *In re Horseshoe Entm't*, 337 F.3d at 434–35. But it is inapposite here. Numerous likely witnesses reside in Houston, and some of the key allegations in EIG's Complaint concern the conduct of BANA personnel, Shang Gao and Erika Smith, based in Houston at the time in question.

How then to weigh these factors? The Fifth Circuit's mandamus jurisprudence on transfer decisions is instructive. In *In re Radmax*, the Fifth Circuit reversed a district court's decision not to transfer a case from the Marshall Division to the Tyler Division of the Eastern District of Texas. 720 F.3d at 290. The circuit court found that five of eight factors were neutral, three favored transfer, and none favored the original venue other than the plaintiff's choice to file there. *Id.* It warned lower courts to be "fully aware of the inadvisability of denying transfer where only the plaintiff's choice weighs in favor of denying transfer and where the case has no connection to the transferor forum and virtually all of the events and witnesses regarding the case—here, indeed *all* of those events, facts, witnesses, and other sources of proof—are in the transferee forum." *Id.* Likewise, in *Volkswagen II*, a product liability action arising out of a car accident in the Dallas area, the court found that none of the factors favored keeping the case in the Marshall Division of the Eastern District, its original venue. 545 F.3d at 316–38. All witnesses, sources of proof, and local interests were to be found in Dallas. *Id.*

In contrast to these cases, this case has considerable contacts with both the transferor and transferee venues. EIG's choice to file in Houston is quite reasonably based on the case's actual connections to this venue, and EIG's choice has the advantage of a markedly quicker median time to disposition. Set against these considerations, BANA's emphasis on the relative distribution of witnesses and evidence is not so strong that it establishes New York is clearly the more convenient venue. Accordingly, the Court declines to grant BANA's request for transfer.

### III. MOTION TO DISMISS

The Federal Rules of Civil Procedure permit a district court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A pleading

9

that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). The complaint must plead "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. When ruling on a motion to dismiss, the court must "construe facts in the light most favorable to the nonmoving party, as a motion to dismiss under 12(b)(6) is viewed with disfavor and is rarely granted." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quotation omitted).

BANA contends that EIG has failed to state a claim for copyright infringement. "A claim of copyright infringement has two elements: (1) ownership of a valid copyright; and (2) copying constituent elements of the work that are copyrightable." *Geophysical Service, Inc. v. TGS-NOPEC Geophysical Co.*, 850 F.3d 785, 791 (5th Cir. 2017). "[R]egardless of whether a plaintiff can meet these elements, the existence of a license authorizing the use of copyrighted material is an affirmative defense to an allegation of infringement." *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 499 (5th Cir. 2012) (quotation omitted). Accordingly, EIG's factual allegations must make it plausible that EIG is entitled to relief under this standard.

BANA challenges EIG's complaint in several ways. Most broadly, it asserts that EIG has actually stated claims that sound in breach of contract, not in copyright infringement. (Doc. No. 32 at 18.) BANA faces a steep uphill climb to press this argument, because district courts have routinely permitted EIG to proceed with the same sort of copyright infringement claims that it has stated here. *See, e.g.*, *Energy Intell. Group, Inc. v. CHS McPherson Refinery, Inc.*, 300 F. Supp. 3d 1356 (D. Kan. 2018); *Energy Intell. Group, Inc. v. Kayne Anderson Capital Advisors,*

10

*LP*, 2016 WL 1203763 (S.D. Tex. Mar. 22, 2016); *Energy Intell. Group, Inc. v. Jeffries, LLC*, 101 F. Supp. 3d 332 (S.D.N.Y. 2015).

BANA is correct that, when a copyright owner permits another to access or use copyrighted material subject to a license agreement, as here, some disputes between them are properly considered breaches of contract. *See, e.g.*, *Design Basics, LLC v. Chelsea Lumber Co.*, 977 F. Supp. 2d 714, 728 (E.D. Mich. 2013). The court in *Design Basics*, one of BANA's favored cases, ruled as such in a dispute between a creator of architectural plans and its licensee. The defendant had a right to sell architectural plans produced by the plaintiff, but afterwards it had to report sales data promptly. *Id.* at 731–33. Failure to report the sales data constituted a breach of their contract, but not an infringement of the plaintiff's copyright. *Id.*

But *Design Basics* makes clear that a licensee can commit copyright infringement. As the court explained there, a copyright owner that grants licenses to its material generally waives the right to sue for infringement, but importantly, "uses of the copyrighted material that exceed the scope of the license may infringe the licensor's copyright." 977 F. Supp. 2d at 728. As illustration of that point, the defendant in *Design Basics* did not have a contractual right to modify the plaintiff's plans before selling them, but it was doing so. This was held to constitute copyright infringement. *Id.* at 733–34.

BANA's other favored cases confirm that licensees can commit copyright infringement by exceeding the scope of the license. For instance, BANA relies *Wood v. B L Bldg. Co.*, 2004 WL 5866352 (S.D. Tex. June 22, 2004), which quotes the Ninth Circuit for the following proposition: "Generally, a copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement and can sue only for breach of contract." *Id.* at *4 (quoting *Sun Microsystems, Inc. v. Microsoft Corp.*, 188

F.3d 1115, 1121 (9th Cir. 1999), *abrogated on other grounds by eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)). But the Ninth Circuit went on to draw the same distinction as in *Design Basics*: "If, however, a license is limited in scope and the licensee acts outside the scope, the licensor can bring an action for copyright infringement." 188 F.3d at 1121.

EIG has asserted the type of infringement claim recognized in *Design Basics* and *Sun Microsystems*. Its licensing agreement was limited in scope, permitting individual subscribers to access its publications only on an individual basis and to share publications with others only occasionally. (Doc. No. 36 at 24.) EIG alleges that BANA employees exceeded these limits, forwarding articles regularly and widely and even placing EIG publications on internal library systems. It contends that BANA thereby violated EIG's exclusive rights to reproduce and distribute its copyrighted material. *See* 17 U.S.C. § 106(1), (3). These allegations properly state claims for copyright infringement.

Next, BANA argues that EIG has alleged only copying that was permitted by the licensing agreement. (Doc. No. 32 at 17.) BANA refers here to the provision in the licensing agreement, just mentioned, that allowed subscribers occasionally to distribute a copy of an EIG publication to a few individuals in a "non-systematic manner." This argument fails as well. EIG's complaint contains detailed allegations that amount to well more than occasional, non-systematic distribution. As noted, Shang Gao allegedly revealed that a subscriber forwarded *Oil Daily* to him regularly and put it on an internal library. Similarly, Shanna Qiu allegedly revealed that a subscriber forwarded *Natural Gas Week* routinely to Qiu's "entire team." Further litigation may bear out BANA's view that its employees' conduct was within the scope of the license agreement. For now, EIG's allegations suffice to satisfy the Rule 12(b)(6) standard.

Finally, BANA argues that, even if EIG has made adequate allegations for infringement of *Oil Daily* and *Natural Gas Week*, it has not done so for the publications underlying its four other claims: *World Gas Intelligence*, *Petroleum Intelligence Weekly*, *Energy Intelligence Finance*, and *Nefte Compass*. (Doc. No. 32 at 15–17.) It bases this argument partly on cases holding "that plaintiffs must adequately allege specific acts of infringement by each defendant." (Doc. No. 32 at 16, citing *Springboards to Educ., Inc. v. KIPP Fdtn.*, 2017 WL 3917701, at *4 (N.D. Tex. Sept. 7, 2017; *Taylor v. IBM*, 54 F. App'x 794 (5th Cir. 2002)). But those cases concern the problem of complaints that name numerous defendants and then make broad allegations not associated with any particular defendant. The present case, brought against a single defendant for the acts of its employees, is free of that problem.

BANA also bases this argument on cases requiring a plaintiff to plead "by what acts during what time" the defendant infringed the copyright. *See Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992); *see also Energy Intell. Group, Inc. v. Jeffries, LLC*, 101 F. Supp. 3d 332, 340 (S.D.N.Y. 2015). EIG's allegations suffice to satisfy the standard imposed in these cases. EIG's complaint identifies the copyrights at issue, the relevant time period, and the individuals likely to be involved if any infringement occurred. These allegations put BANA on notice, permitting it to defend itself. In addition, EIG's allegations as to *Oil Daily* and *Natural Gas Week* make it quite plausible that BANA employees subscribed to the other four EIG publications engaged in similar conduct.

Moreover, as EIG correctly notes, evidence of BANA employees' conduct regarding the other four publications is "peculiarly within the possession and control of the defendant." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2nd Cir. 2010). That is, it is likely to be found on the servers and computers of BANA, which are inaccessible to EIG until discovery commences. At

the pleading stage, "when discoverable information is in the control and possession of a defendant, it is not necessarily the plaintiff's responsibility to provide that information in [its] complaint." *Innova Hosp. San Antonio, L.P. v. Blue Cross and Blue Shield of Ga., Inc.*, --- F.3d ----, 2018 WL 2943339, at *6 (5th Cir. 2018). In such cases, the plaintiff may allege facts upon information and belief. *Id.* (citing *Arista Records*, 604 F.3d at 120). EIG has validly done so here.

## IV. CONCLUSION

Defendant Bank of America N.A. has moved this Court to transfer this action to the Southern District of New York or else to dismiss it for failure to state a claim upon which relief may be granted. (Doc. No. 32.) BANA has, however, not met its burden of showing that the transferee district would be clearly more convenient than this one. Moreover, the complaint filed by Plaintiffs Energy Intelligence Group, Inc. and Energy Intelligence Group (UK) Limited states valid copyright infringement claims supported by adequate factual allegations. Accordingly, BANA's motion is **DENIED**.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on the 5th day of July, 2018.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE